# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAQUI B. GOLD, ROBIEMIN A. GOLD, <br><br> Plaintiffs, <br> vs. <br><br> NCO FINANCIAL SYSTEMS, INC.; et al., <br><br> Defendants. | CASE NO. 09cv1646-LAB (CAB) <br><br> **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES** |

In the early stages of litigation of this case, Defendant NCO Financial Systems ("NCO" or "Defendant") made an offer of judgment pursuant to Fed. R. Civ. P. 68, which Plaintiffs accepted. The offer was for a sum of money, plus "reasonable attorney's fees and costs, to be mutually agreed upon by the parties, or if no agreement can be reached, to be determined by the Court in accordance with 15 U.S.C. § 1692k." Defendant OSI Collection Services, Inc. had been dismissed earlier, leaving NCO as the sole Defendant.

The parties do not dispute that the Court can and should award costs and attorney's fees; their only disagreement concerns the amount Plaintiffs have requested. Defendant argues the costs and fees are unreasonable and excessive, and asks the Court to reduce them. Specifically, Defendant argues the claimed hourly rate is too high; fees should not be awarded for unproductive or unnecessary work; the case was overstaffed in that work was needlessly assigned to multiple attorneys instead of one attorney, or to attorneys instead of

staff; and not all the costs being claimed are the "costs of the action" as defined by 28 U.S.C. § 1920. Defendant raised an additional objection — that Plaintiff sought fees incurred after the offer of judgment had been accepted — but Plaintiff conceded this point and agreed the award should be reduced to reflect this. Defendant also points out the amount recovered was only $3,000, and the amount sought in fees and costs is nine times that.

The Court held a hearing on this issue and gave its preliminary decision, which it now confirms in this written decision.

**I.   Legal Standards**

The parties agree the Court should use the lodestar method. Using this method, the Court begins by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate, and then makes any necessary adjustments to account for factors not already subsumed within the initial calculation. *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1129 (9th Cir. 2008).

In determining a reasonable hourly rate, the Court considers the prevailing market rate in the community. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). Plaintiffs' principal counsel, Thomas Lyons, Esq., is based in Minnesota. Plaintiffs' decision to hire him was one of preference, not necessity. Therefore, the relevant community is this district. *Id.* (explaining that the relevant community is generally the forum in which the district court sits, though rates outside the forum may be used if local counsel was unavailable).

The Court must exclude hours that were not reasonably expended — for example, hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Fees are properly reduced when the task is overstaffed, *id.*, when hours are submitted in block format, *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948–49 (9th Cir. 2007), or when the work performed is inadequately identified. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Overstaffing can include duplicative billing for unnecessary conferences between colleagues, *Welch*, 480 F.3d at 948–49, or failure to appropriately delegate tasks to staff or colleagues with lower billing rates. *Northon v. Rule*, 494 F. Supp. 2d 1183, 1187 (D.Or. 2007) (reducing fee award where, among other things,

senior attorney failed to delegate relatively simple tasks to junior associates). The party seeking fees bears the burden of adequately documenting the hours claimed. *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

## II. Discussion

### A. Rates

Plaintiffs represent Thomas Lyons' reasonable hourly rate as $400, but provide little support for this other than citing cases where other courts approved his rates at $325 to $400 per hour. Local counsel Christina Wickman represents her customary rate for cases of this type is $250 per hour. Local counsel Robert Stempler, who performed a small amount of work early in the case, represents his customary rate for this type of case is $350 per hour. Mr. Lyons represents that the customary rate for Sharon McMahon, a paralegal he employs, is $90 per hour.

Defendants challenge all three attorneys' hourly rates, arguing $295 is a reasonable rate for Mr. Lyons and Mr. Stempler, and $125 is reasonable for Ms. Wickman. In reply, Plaintiffs argue the Court should look to the prevailing rate in Minnesota. Plaintiffs argue that, while local counsel may have been available, it was necessary to hire Mr. Lyons because of his expertise in military matters. Plaintiffs also cite evidence that another attorney's hourly rate of $355 was recently found reasonable in this district.

With regard to the military issues, there is no showing Mr. Lyons' expertise in this area was ever required. The case settled relatively early and, as the Court noted at the hearing, the issues were not particularly novel or complex. Even in the pleadings, the military issues were incidental.[1] There was nothing wrong with Plaintiffs' hiring Mr. Lyons, but to pay a premium for his expertise when it was not called on is unreasonable.

---

[1] The amended complaint alleges NCO called Mrs. Gold, demanding payment. When Mrs. Gold said she could not pay and that her husband was deployed with the Navy, NCO allegedly threatened to call his commanding officer to discuss the failure to pay. At the time, Corpsman Jacqui Gold was on a ship in the Indian Ocean. Corpsman Gold learned about the call later. The remaining allegations concern the frequency and time of calls, the caller's tone of voice and other remarks, and Plaintiffs' emotional reactions to the call. The fact that Corpsman Gold was at sea does not, as Plaintiffs have argued, render the case unusually complex.

1    The Court also finds the evidence of rates charged by a local colleague, Joshua Swigart, Esq., unconvincing. First, Mr. Swigart's declaration never comments on the requested $400 rate; rather, he merely attested to the reasonableness of Ms. Wickman's fee, noting she is a partner in her own consumer rights firm. Second, Plaintiffs cite only one case where $355 was found to be a reasonable hourly rate, *Shaw v. Credit Collection Servs.*, 09cv883-LAB. In that case, however, the $355 hourly rate applied to 0.3 hours of work performed by a senior partner,[2] while 6.5 hours performed by an associate were billed at $225 per hour. Mr. Swigart's own declaration identifies a different case, *Bellows v. NCO Financial Systems*, 07cv1413-W, in which his own hourly rate of $355 was found reasonable. *Bellows* was a much more complex case, however; among other things, it was a putative class action.

Review of the other cases mentioned in Mr. Swigart's declaration shows that in other cases, lower rates were approved. In *McDonald v. Bonded Collectors, LLC*, 233 F.R.D. 576 (S.D.Cal. 2005), Mr. Swigart's $315 hourly rate was found reasonable, though he only billed 0.7 hours. Among the other cases, Defendants point to *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215 (S.D.Cal., 2008), where Mr. Swigart's hourly rate of $295 was found reasonable.

The Court agrees Ms. Wickman's requested hourly rate is very close to a reasonable rate for this case. She was filling a supporting role, though in fact she appears to have contributed significantly to the litigation beyond merely serving as local counsel.

Having considered the evidence and the parties' arguments, the Court determines Mr. Lyons' reasonable hourly rate for this case is $295, as is Mr. Stempler's. The Court also concludes $225 per hour, the rate recently awarded in *Shaw*, is reasonable for Ms. Wickman's work.

### B.    Hours Reasonably Expended

Mr. Lyons billed 45.98 hours; Mr. Stempler, 2 hours; Ms. Wickman, 23.9 hours; and Ms. McMahon, 1.28 hours. Defendants ask the Court to reduce Plaintiffs' requested hours

---

[2] Plaintiff believed the partner who billed at this rate was Mr. Swigart; however, it was actually another partner, Robert Hyde, Esq.

to account for block billing, duplicative work, communications that could not be billed to the client, unproductive work, and administrative work billed by attorneys. Defendants seek a reduction by 43.37 hours, broken down as follows: 6.97 hours for work performed after the offer of judgment;[3] 7.76 hours for excessive fees, 7.01 hours for block billing or overbilling; 13.32 hours for inter-office communications and duplicate entries; 2.09 hours for work that did not advance the litigation; 2.66 hours for unnecessary work; 3.06 hours for work that should have been performed by administrators; and 0.5 hours for non-billable instructions to staff. The Court has reviewed these and agrees Plaintiffs' hours must be significantly reduced. Plaintiffs do not attempt to rebut these objections in any detail, but broadly discuss the complexity of the case and argue the hours are reasonable.

The Court agrees many of Plaintiffs' billings were inappropriately block-billed. For example, the first item in Mr. Lyons' billing is for 4.03 hours for an intake conference, some of which is billable and some of which was not. Some portion of this conference, for example, involved discussing Mr. Lyons' firm's website and his qualifications, and answering questions about the retainer agreement. As part of this conference, Mr. Lyons also billed for looking up Defendant on the internet, a simple task that could and should have been delegated. Looking at entries such as this, it is impossible to say with any certainty what portion of the 4.03 hours Defendants should pay for. The Court therefore agrees a reduction for block billing is appropriate.

Defendants also argue Plaintiffs inappropriately billed for inter-office communications. In part they object that many of the entries are so vague it is impossible to know whether the attorneys were doing work that advanced the litigation. And in part they object that many of the entries describe work that would not ordinarily be billed to clients. In many cases, only one attorney billed for the call, suggesting that the other didn't consider it billable. But in some cases both billed, and Defendants point out that the effect is a duplicative billing. Where the relationship of the task to the litigation is marginal to begin with, doubling the hours through duplicative billings is unreasonable.

---

[3] As noted, Plaintiffs do not contest this reduction.

While billing for conferences between counsel can be appropriate — for example, where attorneys are collaborating on work or engaging in collective problem solving — the Court agrees the entries identified here do not identify such work. Instead, the tasks are either unidentified or pertain to business or administrative matters. As an example, on March 13, 2009, Mr. Lyons billed 0.3 hours for a "long discussion" with Mr. Stempler, while Mr. Stempler billed 0.2 hours for the same conference; neither explained the subject matter or task at hand. As a second example, on September 14 and 15, 2009, Mr. Lyons and Ms. Wickman together billed over an hour[4] for emails about signatures on a substitution of counsel motion.

Defendants also argue that such 2.09 hours spent on such tasks as file review, checking voicemails, working on business matters, and the like did not advance the litigation and are therefore not properly billed. Defendants also point out Mr. Lyons began working on discovery matters even before the early neutral evaluation conference had been held, and they argue the hours spent on discovery were needless at this early stage. The Court agrees that much of Plaintiff's counsel's work was unnecessary, and the requested reduction of 2.09 hours is very reasonable.

As Defendants also point out, much of the work Plaintiffs' counsel did could and should have been delegated to staff and was either billable only at the rate for a paralegal, or else not billable at all. This includes matters such as arranging for meetings and travel, sending or obtaining documents, and the like. The top-heavy billings (nearly 46 hours for Mr. Lyons, 26 hours for the two local counsel, and 1.28 hours for the paralegal), which resemble an inverted pyramid, illustrate this point.[5]

---

[4] Unraveling the exact time spent on these emails is impossible because Mr. Lyons' entry is block-billed. His two entries on September 14 include 0.23 hours for a call and follow-up email to Ms. Wickman, and 0.28 hours for "continuation on substitution of attorneys for San Diego District." Ms. Wickman on September 15 billed 0.6 hours for reading the emails and doing something unidentified about a power of attorney. Ms. Wickman's billing entry also shows the communication concerned the "contract with Golds," which may refer to the retainer agreement.

[5] In other cases, courts have applied this factor after calculation of the lodestar amount, to reduce the total damount. *See, e.g., Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.2d 588, 596 (6th Cir. 2008) (affirming district court's fee award, where district court reduced lodestar amount by 25% "to account for top-heavy billing by partners for work that

This raises an additional issue, however, regarding billing for intra-office communication. While Mr. Lyons delegated some work to Ms. Wickman and Ms. McMahon, he should have delegated more. But the delegation, such as it was, was appropriate and necessary. Ms. Wickman's own review of the materials and some of her communications with Mr. Lyons and other involvement in the case are a necessary part of the delegation process. The Court therefore finds it inappropriate to discount Ms. Wickman's hours for the second September 2, 2009 entry, the entries for December 3 through 7, the second December 9 entry, the second December 21 entry, the first entry for January 6, 2010 (except for the block billing deduction), the January 10 entry, the February 3 entry, and the first February 12 entry. These amount to 5.7 hours the Court will not deduct from Ms. Wickman's billings. The delegation was not so extensive or efficient as to merit including both attorneys' hours, however, so Mr. Lyons' hours will still be deducted.

Defendants' opposition to the motion for attorneys' fees gives only illustrative examples, but the Court has independently reviewed the billings and agrees the hours claimed are excessive. Defendants' requested reductions are well within reason and are approved.

### C. Lodestar Calculation

After applying the reductions in hours claimed, the Court concludes the hours to be used in the lodestar calculation are 19.71 hours for Mr. Lyons, 1.7 hours for Mr. Stempler, and 12.8 hours for Ms. Wickman. Multiplied by the reasonable rates the Court has found, the totals are $5814.45 for Mr. Lyons' work, $501.50 for Mr. Stempler's work, and $2880 for Ms. Wickman's work. Defendants have not disputed that Ms. McMahon properly billed $115.20 so the Court adds this to the other fees. The lodestar amount is therefore $9311.15.

/ / /

/ / /

---

could have been performed by associates). But here, Defendants have identified particular entries they think should be discounted. The end result is the same, except that, as long as it is feasible, discounting based on particular identified entries is likely more accurate.

**D.     Reduction for Limited Success**

As *Hensley* points out, the lodestar calculation is not necessarily reasonable, and may need to be reduced to account for a plaintiff's limited success. 461 U.S. at 436. The Court's review of the billings and Plaintiffs' pleadings suggests Mr. Lyons initially expected a large award based on emotional harm. His work on retaining a forensic psychologist and his trip to San Diego to meet Plaintiffs in person support this conclusion.

Instead of the large recovery Mr. Lyons may have expected, however, Plaintiffs settled for $2000 in statutory damages plus $1000 in actual damages. Defendants also argue this demonstrates Plaintiffs prevailed on only two of their causes of action. Thus, if the Court awards the lodestar amount, Plaintiffs will have spent three times their damages.

Plaintiffs point out that for a variety of reasons, fee awards need not be proportionate to the recovery, and the Court agrees. *See Owens v. Howe*, 365 F. Supp. 2d 942, 947 (N.D. Ind., 2005) (in Fair Debt Collection Practices Act case, holding that the fee award "need not be proportionate to the settlement or judgment amount . . . as that would defeat the public benefit advanced by the litigation") (citing *Morales v. City of San Rafael*, 96 F.3d 359, 365, *as am on den. of reh'g and reh'g en banc*, 108 F.3d 981 (9th Cir. 1997)). The relatively low settlement amount, however, makes clear Plaintiffs did not succeed on most of their claims, and their settlement for statutory damages plus $1000 is analogous to an abandonment of the remaining claims.

While Plaintiffs argue this was a complex case, in fact it appears to have been fairly ordinary. Even if Plaintiffs' initial impression was reasonable, it eventually became clear the case was rather straightforward and the claims would not likely bring a large recovery; and the settlement reflects this. Bearing in mind the relatively low value of the claims, fees should have been kept lower. Plaintiffs' counsel's error in over-valuing and over-preparing the case should not be visited on Defendants. The Court is required to consider the relationship between the fee award and the degree of success, *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 809–10 (9th Cir. 1994), and has discretion to reduce the

///

fee award to account for the limited success. *Robins v. Matson Terminals, Inc.*, 283 Fed. Appx. 535, 535 (9th Cir. 2008).

While Plaintiffs obtained only $3000, they have also effectively deterred NCO from engaging in offensive and objectionable collection tactics, and that deterrence is worth something. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (discussing the potential value a plaintiff's recovery of damages in civil rights actions may have in light of its deterrence effect). *See also Van Skike v. Director*, 557 F.3d 1041, 1047 (9th Cir. 2009) (discussing the importance of encouraging attorneys to undertake Fair Debt Collection Practices Act cases by making adequate fee awards).

Having weighed these factors, the Court concludes a 1/3 reduction is appropriate here. The Court therefore awards $6207.43 in attorney's fees.

**E.     Costs**

Plaintiffs have sought $2,406.51 for Mr. Lyons' costs, $58 for Ms. Wickman's costs, and $13 for Mr. Stempler's costs. Ms. Wickman's costs are unremarkable and Defendants do not object to them. Defendants object to all charges for experts, mailing, lunches, and travel expenses, citing 28 U.S.C. § 1920 and arguing the costs were inadequately documented.

Mr. Lyons' expenses include $1,756.51 for a trip to San Diego to meet Plaintiffs personally in Ms. Wickman's office, for lunch on the way to that meeting, and for consultation with a forensic psychologist who Mr. Lyons considered using as an expert witness. The Court finds these charges unreasonable and will not award them. Mr. Lyons' mailing charges are simply designated "Postage" with no further explanation. The Court finds these inadequately documented and will therefore not award them. The Court finds Mr. Stempler's costs for filing the complaint by mail to be a reasonable out-of-pocket litigation expense that would ordinarily be paid by clients, and will therefore award them. *See Molina v. Creditors Specialty Serv., Inc.*, 2010 WL 235042, slip op. at *4 (awarding non-taxable costs of filing the complaint).

/ / /

Plaintiffs have also argued several other types of costs are awardable, including the cost of electronic research and long-distance phone calls. They have not, however, documented any such costs.

### III.     Conclusion and Order

For these reasons, the Court **AWARDS** Plaintiffs $6207.43 in attorney's fees plus $71 in costs.

**IT IS SO ORDERED**.

DATED: August 20, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge